IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CARMEN R. IRELAND,                                CV 04-720-BR

    Plaintiff,                               OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

    Defendant.


**SHARON MAYNARD**
SWANSON, THOMAS & COON
820 SW Second Ave, Suite 200
Portland, OR 97204
(503) 228-5222

    Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**CRAIG J. CASEY**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024


1  -  OPINION AND ORDER

**LUCILLE G. MEIS**
Office of the General Counsel
**DAPHNE BANAY**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2113

    Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Carmen Ireland brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act.  This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

For the reasons that follow, the Court **AFFIRMS** the Commissioner's final decision.

## BACKGROUND

Ireland had insured status under the Social Security Act through June 30, 2000.  Tr. 53.[1]  To prevail on her Title II claim, she must demonstrate that she became disabled on or before that date.  *See* 20 C.F.R. § 404.131(b).  Ireland protectively

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer.

filed her SSI application on February 20, 2002. Tr. 49. To receive payments under her Title XVI claim, she must demonstrate that she remained disabled after that date. *See* 20 C.F.R. §§ 416.203(b), 416.501. *See also* Social Security Ruling (SSR) 83-20.

At the time her insured status expired, Ireland was 36 years old. She obtained a high school equivalency diploma and attended college for two years. Tr. 73. She had past work experience as a retail salesperson, a stocker, a telemarketer, a shipping and receiving clerk, a receptionist, and a general office clerk. Tr. 68, 92, 149, 386. Ireland last worked in December 1999 as a receptionist. Tr. 68, 92, 149, 363.

Ireland alleges she became disabled on January 1, 1998, due to the combined effects of high blood pressure, heart murmur from a defective valve, panic disorder, anxiety, depression, fatigue, difficulty concentrating and thinking clearly, headaches, heart pain, heart stops, breathing problems, and dizziness. Tr. 67, 100, 104.

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. §§ 404.1520, 416.920. Ireland does not

challenge the ALJ's findings in the first four steps of the sequential process.

To make a determination at Step Five, the ALJ must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* SSR 96-8p. At Step Five, the Commissioner also must determine whether the claimant is able to do any work in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(e),(f), 416.920(e),(f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

## **THE ALJ'S FINDINGS**

The ALJ found Ireland's ability to perform basic work-related activities was limited by "severe depression and anxiety since December 2001." Tr. 14. The ALJ concluded no other impairments had significant impact on her ability to work.

The ALJ assessed Ireland's RFC as follows:

4 - OPINION AND ORDER

> [T]he claimant retains the residual
> functional capacity to perform simple,
> routine, repetitive work, requiring no
> interaction with the general public and only
> occasional interaction with her co-workers
> and supervisors.  She has no other functional
> or environmental limitations.

Tr. 16, 18.

The ALJ found Ireland could not perform any of the work she had done in the past, but he concluded she was capable of performing other work in the national economy.  Tr. 19.  The ALJ relied on testimony from an impartial vocational expert (VE), who opined a person of Ireland's age, education, past work experience, and RFC could work as a motel housekeeper, a small parts assembler, or a cannery worker.  Tr. 19.

The ALJ concluded Ireland was not under a disability at any time through the date of the ALJ's decision and was not eligible for benefits under Titles II or XVI of the Social Security Act.  Tr. 19.

## **STANDARDS**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Ireland contends the ALJ failed to accurately assess her RFC because he improperly discredited her subjective statements, the opinion of her primary-care physician, and the opinion of her mental-health counselor and clinical supervisor. As a result, Ireland argues, the ALJ erroneously concluded Ireland remains capable of working.

### I. The ALJ's Credibility Determination Regarding Ireland's Statements

The ALJ found Ireland's underlying medical conditions could reasonably result in the panic attacks and depressive symptoms that she reported if she attempted to exceed her RFC. He determined, however,

> the claimant's allegations as to the
> intensity, persistence and limiting effects
> of her symptoms are disproportionate and not
> supported by the objective medical findings
> nor any other corroborating evidence . . . .

> Considering the entire case record, the
> undersigned cannot find her allegations
> concerning her inability to work to be
> sufficiently credible to serve as additive
> evidence to support a finding of disability.

Tr. 15.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of her symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). *See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id*. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id*. *See also* SSR 96-7p.

Here the ALJ considered the proper factors and made specific findings to support his credibility determination regarding Ireland's statements. The ALJ relied on objective medical evidence to support his conclusion that Ireland overstated the severity and limiting effects of certain medical conditions. For example, Ireland asserted she was limited by "heart pain" and her "heart stops sometimes," but echocardiogram studies were essentially normal. Tr. 104, 229-30, 312. Ireland also reported debilitating symptoms from high blood pressure, but objective medical evidence indicated these symptoms were controlled by medication and were generally normal with occasional instances of elevation into the mild hypertensive range. Tr. 139, 208, 210, 212, 221, 281, 283, 298, 312.

Ireland also stated she had concentration and memory problems, but objective test scores on scales for attention, concentration, new learning, and memory, as well as general cognitive functioning, were all in the normal range. Tr. 187-88.

In addition, the record reflects Ireland's history of mental-health treatment militates against her assertion that anxiety and depression have disabled her since January 1998. For example, Ireland did not report or seek treatment for "fearful panicky episodes" until December 26, 2001. Tr. 209-10.

In June 1999, Ireland was referred for evaluation to John Crossen, Ph.D., by the state vocational rehabilitation agency.

Tr. 183. During that evaluation, Ireland reported several months of anxiety attacks associated with the stress of adjusting to a new job. Tr. 183-84. She did not, however, make any reports or seek treatment contemporaneous with those anxiety attacks nor did she see Dr. Crossen for treatment. Tr. 186.

Although Dr. Crossen diagnosed Ireland with anxiety disorder and dysthymia, he did not suggest Ireland's symptoms were disabling. Tr. 188. He concluded Ireland was ready for employment, and he recommended placement services from the vocational rehabilitation agency. He also opined Ireland's anxiety and dysthymia were treatable with cognitive-behavior therapy. Tr. 188.

Despite Dr. Crossen's recommendation, Ireland did not attempt to obtain treatment at that time. In fact, she apparently did not complain about anxiety or depression again until December 2001 when she reported panic attacks to Scott Falley, M.D., her primary care provider. Dr. Falley prescribed Paxil, an antidepressant medication. Tr. 207, 209, 233-36. In approximately January 2002, Ireland initiated counseling at Good Samaritan Ministries. Tr. 206. Her counselors believed her anxiety and depression would subside with therapy. Tr. 203.

As noted, it is reasonable to expect a claimant experiencing debilitating symptoms to seek medical or psychological treatment. *Smolen*, 80 F.3d at 1284. Ireland's unexplained failure to do so

until December 2001 damages her credibility as to her claim that she was unable to work before then. Moreover, the record does not support Ireland's claim that severe symptoms made it impossible for her to perform any work after December 2001.

In December 2002, Cheryl Brischetto, Ph.D., performed a psychodiagnostic evaluation with testing and did not find Ireland's condition disabling. Tr. 237-45. Dr. Brischetto assigned a global assessment of function score (GAF) of 60, which indicated only moderate functional limitations. Tr. 244. Dr. Brischetto, however, concluded the GAF of 60 underestimated Ireland's true ability. Tr. 241.

As noted by the ALJ, there is no objective medical evidence or contemporaneous report by Ireland to physicians of frequent, severe panic attacks or episodes requiring urgent psychiatric intervention. Ireland's description of her symptoms and the limitations they cause are vague and general. In addition, the ALJ pointed out that Ireland did not identify any specific limitations in particular work-related activities or episodes of decompensation caused by engaging in work-like endeavors. Tr. 15.

The ALJ also found Ireland continues to engage in activities of daily living that are typical of a person who is not disabled. She is raising two children as a single parent, attends to the needs of her family, and performs typical household chores.

Tr. 86-87, 134-35.  She also is able to use public transportation without experiencing psychological symptoms.  Tr. 84.

Ireland's work and school history also support the ALJ's credibility determination.  Ireland did not stop working or going to school due to her symptoms:  She lost her last job when her employer learned she was looking for other work, and she stopped going to school because she met a man and expected to get married.  Tr. 238.

Based on this record, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record for discrediting Ireland's statements about the severity of her symptoms.

## II.  **The ALJ's Credibility Determination Regarding Medical Opinions**

Ireland contends the ALJ improperly discounted the medical source statement of Dr. Falley.

The ALJ may reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Dr. Falley first examined Ireland and became her primary-care physician on or about November 21, 2001.  Tr. 233.

11 -   OPINION AND ORDER

Dr. Falley is not a psychiatrist and did not administer psychological testing, but he prescribed Paxil for Ireland's reported anxiety and depression. Tr. 209, 233.

On February 5, 2002, Dr. Falley opined Ireland had experienced panic attacks, anxiety, and depression, and he concluded "the severity of these conditions precludes her working at this time." Tr. 236. He requested Ireland to be considered for "any existing assistance programs she would qualify for." Tr. 236.

On May 1, 2002, Dr. Falley prepared a Mental Status Report requested by the Department of Human Services Disability Determination Services (DDS).[2] Tr. 232-35. He reported Ireland had mildly improved as a result of medication and was completing activities of daily living, but her functional status was "poor/marginally acceptable." Tr. 233-34.

On July 3, 2003, Dr. Falley wrote a letter to Oregon Adult and Family Services in which he stated: "At this time, [Ireland's panic/anxiety disorder] precludes her from obtaining employment." Tr. 295.

The ALJ gave Dr. Falley's opinion minimal weight because it was not well-supported by medically acceptable clinical or

---

[2] DDS is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

diagnostic studies. Tr. 16. Dr. Falley's contemporaneous chart notes reveal he relied solely on Ireland's reports of depression and anxiety and did not perform mental status examinations, administer testing, or record clinical observations of specific symptoms.

The ALJ also found Dr. Falley's opinion inconsistent with other psychological evidence in the record. Tr. 16. As already shown, Dr. Crossen noted the presence of anxiety and dysthymia, but he did not believe they precluded employment. Tr. 188. Dr. Crossen concluded Ireland had strong cognitive, inter-personal, and technical assets and was ready for employment. Dr. Crossen suggested vocational services should focus on Ireland's placement and development rather than job-readiness training. Tr. 189.

Similarly, Dr. Brischetto found only moderate impairment in Ireland's functioning and concluded Ireland's true ability was underestimated. Tr. 237-45. Dr. Brischetto noted Ireland responded on a depression inventory in a manner that suggested a severe level of depression inconsistent with her activities of daily living, and she appeared to give less than full effort during some of the mental status tasks. Tr. 241-42. Ireland reported Paxil had not been very helpful, which prompted Dr. Brischetto to wonder why a change in medication had not been tried. Tr. 243. Although Dr. Brischetto diagnosed dsysthymia

and anxiety disorder, she did not suggest these conditions would preclude Ireland from performing any particular work-related activities. Tr. 243.

The ALJ also relied on the findings of the DDS psychological consultants, Peter LeBray, Ph.D., and Robert Henry, Ph.D. Tr. 16. These consultants did not examine Ireland, but they reviewed her entire medical record. Tr. 16. Dr. LeBray did not find sufficient evidence to conclude Ireland was impaired psychologically before her insured status expired on June 30, 2000. Tr. 246. Dr. LeBray noted Dr. Falley's diagnosis and prescription for Paxil after Ireland's insured status expired, but he noted Dr. Falley lacked psychological training and expertise and failed to make objective findings or to provide specific information to support his disability opinion letters. Tr. 258.

Dr. Henry agreed with Dr. LeBray's assessment that the evidence up to the expiration of Ireland's insured status was not sufficient to establish her psychological impairment. Tr. 260, 274, 276. Dr. Henry completed a Mental Residual Functional Capacity Assessment form on which he rated the severity of Ireland's limitation for 20 specific work-related abilities. Tr. 274-76. He did not find any significant impairment for 13 of these abilities and found only moderate limitation in the rest. Tr. 274-75. Dr. Henry opined Ireland remained capable of working

with appropriate limitations.  She could understand, remember, and perform short, simple instructions and engage in short, simple interactions with co-workers.  He opined she would perform best "out of the public eye" in "a predictable work environment."  Tr. 276.

The opinion of a nonexamining physician may constitute substantial evidence to discredit the contradictory opinion of a treating physician if it is consistent with other evidence in the record.  *Magallanes v. Bowen*, 881 F.2d at 752.  Drs. LeBray and Henry did not examine Ireland, but they were in a superior position to Dr. Falley in evaluating Ireland's condition because they are psychologists and had the benefit of Dr. Brischetto's psychological testing and mental status assessments, which Dr. Falley did not have.  Drs. LeBray and Henry also made specific findings regarding Ireland's specific work-related abilities, which Dr. Falley did not.  The ALJ concluded the opinions of Drs. LeBray and Henry were more consistent with the record as a whole, and, as a result, the ALJ rejected Dr. Falley's disability letters in favor of the well-supported opinions of Drs. LeBray and Henry.  Tr. 16.

The Court, therefore, finds the ALJ did not err because he gave specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Falley's disability opinion.  *See Magallanes*, 881 F.2d at 751.

### III. **The ALJ's Credibility Determination Regarding Lay Statements**

Ireland contends the ALJ improperly rejected four opinion letters written by Patricia Thompson, a clinical supervisor at Good Samaritan Ministries.

Friends, family members, and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala*, 12 F.3d at 918. The ALJ cannot disregard such testimony without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id*. The Commissioner may accord less weight to the opinions of other sources than to the opinions of "acceptable medical sources." *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

Thompson wrote letters in January 2002, April 2002, January 2003, and September 2003 in which she recommended Ireland and her children receive disability benefits to meet their basic needs. Tr. 203, 206, 278, 289. Thompson, however, did not personally examine Ireland. Based on information she received from Sadrine Ballosingh, Ireland's counselor at Good Samaritan Ministries, Thompson opined Ireland's depression and anxiety inhibited her ability to obtain employment. Tr. 203.

The record does not include Ireland's counseling history with Ballosingh or Ballosingh's qualifications. The record also

16 - OPINION AND ORDER

does not contain any progress notes describing Ballosingh's findings, the diagnostic technique used to reach the findings, or how Thompson acquired information from Ballosingh regarding Ireland's symptoms, activities, and limitations. Accordingly, the Court finds it is unclear whether Thompson had accurate knowledge of Ireland's symptoms or was competent to offer an opinion regarding Ireland's condition.

Ireland contends the ALJ was not sufficiently specific in his evaluation of Thompson's opinions because the ALJ did not identify the substantial evidence in the record on which he relied. The Court disagrees. The ALJ considered Thompson's opinion letters in the context of the record as a whole and concluded Thompson's findings were "unconvincing in light of other substantial evidence in the record and afforded them only minimal weight." Tr. 16. Immediately following his reference to "other substantial evidence," the ALJ discussed the findings of Drs. Brischetto and Henry with specificity. Tr. 16. The Court, therefore, finds the ALJ did not err because he provided specific and legitimate reasons supported by evidence in the record for rejecting the lay opinions of Thompson.

**IV. Remaining Contentions**

Ireland's remaining arguments are dependent on her assertions of error regarding the ALJ's evaluation of her statements, the opinion of Dr. Falley, and the letters written by

Thompson. Because the Court finds the ALJ properly evaluated these issues, the Court need not reach Ireland's remaining arguments.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 27th day of June, 2005.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge